## PEYSER v. AMERICAN SECURITY & TRUST CO.

## No. 6113.

United States Court of Appeals for the District of Columbia.

Argued May 10, 1934.

Decided June 18, 1934.

William C. Sullivan, of Washington, D. C., for appellant.

Frederic D. McKenney, John S. Flannery, and G. Bowdoin Craighill, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This was an action by appellant, as plaintiff, against American Security & Trust Company (appellee), as defendant, to recover $87,500 claimed to be due as a commission for obtaining a purchaser for the property known as the Washington Post, which at the time belonged to the estate of John R. McLean, deceased.

The will of McLean provided that no sale of any of the newspaper properties belonging to him at the time of his death should be made by his trustee until the same should first have been approved in writing by Francis T. Homer, if then living, or if he should fail to approve, then without the written approval of his son, Edward B. McLean. Homer was dead at the time of this transaction. Appellee and Edward B. McLean had been appointed trustees under the will of John R. McLean, the former by the terms of the will, the latter by the Supreme Court of the District of Columbia, sitting as an equity court, and, as such trustees, were operating the Washington Post as a daily newspaper at the time of the occurrences out of which this action grew. The newspaper had not been financially successful for several years, and the trustees had had, from time to time, offers for its purchase.

In April, 1931, appellant, who was then the personal counsel of Edward B. McLean, had McLean write a letter to appellee as follows:

"I want to place myself on record, as one of the trustees of my father's estate, that a price of three million dollars should be carefully considered and not lightly dismissed. Please discuss this question with my counsel, Major Julius I. Peyser (appellant), who will be very pleased to arrange for a conference to consider the sale of the Washington Post.

"2. The price of three million for the Washington Post, as aforementioned, of course, includes five percent commission to the broker for the first $500,000.00, and two and one-half percent commission for all over and above that amount, this with the understanding that it is sold to the person with whom the broker first entered negotiations."

Appellee, through Thom, its president, replied to this letter, saying it would be glad to discuss the question of the sale of the Post at any time. After the receipt of the last-mentioned letter, appellant went to see appellee's president, who told him that he did not see how the Post could continue, unless something was done. Appellant then stated that if the commission mentioned in McLean's letter was agreed to, he would be very glad to go out and see if he could obtain a buyer. Appellant interested David Lawrence in the proposed purchase of the newspaper, and in June Lawrence, through a corporation, offered to pay $3,000,000 for the paper, on certain terms not material to the issue before us. The offer contained the following provision: "That before the consummation of such sale the necessary steps will be taken by you, without cost to the undersigned company or its corporate assignee, to obtain if possible the approval or ratification by the proper court of the District of Columbia of the sale of such properties to the undersigned company or its corporate assignee for the considerations herein named, and to pass to the purchaser the complete, unencumbered title to all such properties."

Appellee and McLean accepted the offer in accordance with these terms. In his declaration filed in the lower court appellant charged that appellee "in violation and disregard of its promise and undertaking to and with the plaintiff, in writing expressly withdrew the recommendation which it had theretofore made of the acceptance of the offer of David Lawrence, Incorporated, so procured by the plaintiff as aforesaid, although at said time it had no offer for said newspaper which was more advantageous than the one procured by plaintiff, and no offer which could have been ratified by the court, with the exception of the said offer of David Lawrence, Incorporated. And thereafter, the said defendant and its said co-trustee (McLean), notwithstanding their promise and undertaking aforesaid, made no

effort whatever to obtain the court's approval or ratification of the last-mentioned offer, but on the contrary, by their acts and conduct, prevented such approval or ratification by the court." Appellant, as plaintiff in the action below, did not sue the two trustees of the estate of John R. McLean, nor did he sue Edward B. McLean in any capacity. His action is directed solely against appellee in its corporate capacity. Appellant disclaims any intention of charging appellee with fraud, but apparently bases his right to a recovery upon the failure of the appellee to do all necessary things to secure the approval of the offer by the equity court. The basis of appellant's claim is that appellee, after agreeing to submit and urge the acceptance of the Lawrence offer, in the subsequent court proceedings withdrew its recommendation of that offer and substituted, with its recommendation, a subsequent offer received from William Randolph Hearst, and in this respect it breached its contract.

In the trial of the present action in the court below and after the appellant had been heard as a witness and had introduced considerable documentary evidence, a colloquy occurred between the presiding judge and counsel for appellant, designed to ascertain the precise point on which counsel based his cause of action. In this colloquy the court asked counsel to state his position as to the clause of the contract relating to the approval of the court. To this counsel replied: "It simply means this: that the trustees are to report the matter to the court and to obtain the approval of the court if possible." The court then asked what would be the result if they failed to obtain the approval of the court, and counsel replied: "If they did not obtain the approval of the court—if they do everything to obtain it, if possible, if they do everything to make it possible to obtain it and do not obtain it, there is no liability." From this and what we have already said, it is obvious that the basis of the claim is that appellee, as trustee of the estate of John R. McLean, having accepted the offer submitted by appellant, with an agreement to endeavor to obtain the court's approval, failed to urge the court's approval, but, on the contrary, withdrew the offer because of the subsequently received Hearst proposal of purchase. The trial judge was of opinion that the evidence failed to sustain the case for the plaintiff, and gave binding instructions to the jury and entered judgment for

the defendant (appellee). Preliminary to instructing the jury, Judge Luhring said that the plaintiff would be entitled to his commission if the consummation of the sale was prevented by an act of the defendant (appellee), but that he would not be entitled to the commission if the consummation of the sale was frustrated by action of the court after recommendation by the trustee, and he held, as a matter of fact, that appellee had recommended the sale and that its failure was due to the refusal of the court to give its approval.

We have carefully examined the record. The evidence, both oral and documentary, was uncontradicted, and the court below accepted as true, as we do here, all the testimony in favor of the plaintiff and all proper inferences that may be drawn from it. Giving due effect to it all, we agree with the trial court that the plaintiff failed to make out a case. Having in mind the interpretation of the contract by counsel for appellant, we have a case involving commissions arising out of a contract subject to ratification and approval by a court having jurisdiction of the trust to which the property belonged. Admittedly, no commissions would be payable except in the event of the court's approval, unless the court's approval was prevented by the negligent or improper act of the trustees in violation of their contract. The Supreme Court states the rule in such a case as follows: "If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing and consenting to the prescribed terms, is produced; * * * then the broker does not lose his commissions." [1]

There is in this record a transcript of the three hearings had before Judge Adkins upon the petition of the trustees of the McLean estate to sell the Washington Post. At the first hearing Thom, president of the trust company (appellee), and other witnesses testified as to the value of the Post property, as to other offers the trustees had received, and the reasons impelling the recommendation of the trustees of the sale to Lawrence. At this hearing counsel for the guardian ad litem of the infant children of Edward B. McLean, who had a remainder interest in the property, suggested to the court that the Lawrence offer should be amended to cover the purchase of the capital stock, instead of

[1] Crowe v. Trickey, 204 U. S. 228, 239, 27 S. Ct. 275, 280, 51 L. Ed. 454. See, also, Foltz v. Realty Co., 131 Va. 496, 109 S. E. 463; Gaston, etc., v. Warner (C. C. A.) 272 F. 56; Id., 260 U. S. 201, 43 S. Ct. 18, 67 L. Ed. 210.

the assets of the Washington Post Company. This suggestion the attorneys for Lawrence agreed to adopt, and the court stated that the changed offer should be put in writing. At the same hearing counsel for William Randolph Hearst asked for an opportunity to amend and renew his offer. The result of the proposal to amend the offers was an adjournment of the hearing, to which no one objected, and two days later the second hearing occurred. Thom again testified, and this time he stated that he had not studied the Hearst amended offer, which had just been received, but that off-hand he thought the Lawrence offer better than the Hearst offer. Edward B. McLean's attorney stated that McLean "desired a postponement to give him more time to consider the Hearst and Lawrence offers"; and "that he was opposed to Lawrence's amended offer." And appellant, personally addressing the court, said: "I am in rather a delicate position in being here by reason of the fact that I am the one who was instrumental in bringing the parties together. I am, in a way, 'the broker' in this matter. I have been Mr. McLean's counsel, as Your Honor knows, for the past six months. Fifteen minutes before 12 o'clock today, Mr. McLean called me and told me that he was not interested in any other offer but the offer that his wife may bring in. He asks that if, by 3 o'clock, his wife should submit an offer, it should receive Your Honor's consideration. I had three conversations with Mr. McLean today." Counsel for appellee requested that McLean's reasons in opposition to the Lawrence offer should be stated, and an inquiry was made whether the opposition grew out of the proposal to purchase the stock, rather than the assets, apparently because of the probable effect the change might have upon the life estate of Edward B. McLean. At this stage of the hearing, counsel for Mrs. McLean requested a postponement in order to afford opportunity for further offers. The court continued the hearing, stating that it was the duty of the trustees to receive offers up to the last minute and to make their recommendations to the court.

At the third hearing, which was a week later, no other offers having been received, appellee's president, Thom, testified that a comparison of the Lawrence and Hearst offers had been made by the executive committee of the trust company and the conclusion reached that the Hearst offer was the better, but that McLean, its cotrustee, had not consented to a sale to Hearst, and without it, under the provisions of the will, the trustees were powerless to act. At this point counsel

for Edward B. McLean presented to the court a written statement, signed by McLean, withdrawing his approval of the first Lawrence offer and declining to approve any sale of the Washington Post, either individually or as trustee, and counsel for McLean asked the court, in view of the provisions of the will of John R. McLean, to dismiss the proceedings. The court inquired as to the attitude of appellee, and counsel replied: "We have made the recommendation and we submit the matter to the court, but we say that in view of the provisions of the will and the attitude of the co-trustee, there is really nothing before the court on which to act." Without objection from either Lawrence or appellant, the court thereupon dismissed the proceedings.

Giving due effect to all that is shown above, we are unable to say the failure to consummate the sale resulted from any act of appellee. The McLean estate was being administered under the direction and control of the equity court. The trustees were its officers and bound by its orders and decrees. All of counsel agreed that the sale could not be consummated, except in the event, first, of the approval of McLean and his cotrustee, appellee, and secondly, the approval of the court. The trustees did approve the original offer of Lawrence and did present it to the court in good faith, with a recommendation that it be accepted. Doubtless, if the matter had been then acted on, authority would have been given the trustees to accept the offer, but other interests in the McLean estate objected and suggested changes, and so the matter went over, and in the final hearing McLean, so far as the record shows, capriciously withdrew his approval of the offer or of any offer. His attitude was one of opposition to any sale, and since in the opinion of all parties in interest no sale could be consummated without his consent, and the court adopting this view, obviously it was without power to make the sale. The only thing which appellant claims appellee did inimical to the acceptance of the Lawrence offer was the statement that a comparison of it with the Hearst offer showed the latter to be better, but it is not shown, nor is any claim made, that in so informing the court of its opinion it acted either in bad faith or capriciously. It neither then nor later withdrew its recommendation in favor of the Lawrence sale, but regarding its fiduciary responsibility, as we think it was in duty bound to do, stated to the court frankly the result of its comparison of the two offers. But even if what it did in this respect be characterized in a different way, it would not help appel-

lant in this case, for the reason that it was not directly or indirectly the cause of the collapse of the negotiations. The failure in that respect was the result of the act of McLean. It was he who, having agreed to recommend Lawrence's original offer and having recommended it, withdrew his recommendation and stated in writing to the court that he would not consider any offer for the sale of the property at that time, and appellant's commission being expressly contingent on the sale being made, it is perfectly obvious that whatever complaint he may have against McLean, he has none against appellee. The allegation of the declaration that appellee withdrew its approval of the Lawrence offer is conclusively rebutted by appellant's documentary evidence, and the statement made in argument and in the brief—that appellee failed to make full disclosures to the court—and the other statement that appellee was disingenuous in what it did, are not sustained by anything we can find in the record. The trouble, as we see it, with appellant's case is that he loses sight of the fact that the parties to this controversy all dealt with the subject-matter of the contract as a trust property under the direction and administration of the court. Considered in that aspect, all agreed that the proposed sale should receive the court's approval. That it never did is admitted. In view of that fact, appellant had the burden of showing bad faith, or conduct on the part of appellee so capricious as to amount to bad faith, as the result of which the negotiations failed. To sustain this burden appellant relies on the statement of Thom that an analysis of the Hearst offer with the Lawrence offer was favorable to the former. In this, as we think, appellee only did its duty as trustee. Its silence in the circumstances would have been to disregard its duty. Absolute good faith and frankness were due from appellee to the court, and fidelity and prudence to the trust. In none of these respects was there shown to be default on its part. In this view it would be unfair to condemn it for failure to obtain a court order, believed by all parties—buyer as well as seller—to be necessary, without more than appears here. The remaining assignments relating to the admission of certain evidence objected to by appellant, we think are immaterial.

Affirmed.

HITZ, Associate Justice, took no part in the decision of this case.